# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re:<br><br>JAMES ALEXANDER,<br><br>             Debtor.<br><br>ANDREW R. VARA,<br>United States Trustee, Region 3,<br><br>             Plaintiff,<br><br>v.<br><br>JAMES ALEXANDER,<br><br>             Defendant. | Chapter 7<br><br>Case No. 21-10683 (JTD)<br><br><br><br><br><br><br><br><br><br>Adv. No. 21-_____ (JTD) |

## COMPLAINT SEEKING DENIAL OF DISCHARGE UNDER 11 U.S.C. § 727

Andrew R. Vara, the United States Trustee for Region 3 (the "U.S. Trustee"), alleges as follows:

**I.   Venue and Jurisdiction**

1. The U.S. Trustee is generally charged with oversight of the administration of bankruptcy cases filed in the District of Delaware under 28 U.S.C. § 586.

2. Under 11 U.S.C. § 307, the U.S. Trustee has standing to be heard with regard to this Adversary Proceeding.

3. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the Amended Standing Order of Reference from the United States District Court for the District of

Delaware, dated February 29, 2012, because this adversary proceeding arises in and relates to James Alexander's Chapter 7 bankruptcy case.

4. This is a core proceeding under 28 U.S.C. §§ 157(b)(1), (b)(2)(A), (b)(2)(J).

5. Under Local Rule of Bankruptcy Practice and Procedure 7008-1, the U.S. Trustee consents to this Court's entry of final orders with regard to any claim in this action if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

6. Venue is proper under 28 U.S.C. §§ 1408 and 1409.

7. The U.S. Trustee maintains offices located at the J. Caleb Boggs Federal Courthouse, Suite 2207, 844 King Street, Wilmington, Delaware 19801.

8. James Alexander (the "Defendant" or "Alexander") is an individual who lists his residence on his bankruptcy petition as 3551 Dixie Canyon Pl., Sherman Oaks, CA 91423.

9. Under an Order entered June 7, 2021, which extends the deadline contained in 11 U.S.C. § 727(b) to August 30, 2021, this Complaint is timely. *See* Case No. 21-10683 (JTD), D.I. 131.

**II.    Background**

    **A.    Defendant's Position as an Insider of Cred Inc. and Cred Capital, Inc.**

10. Cred Inc. ("Cred") was a cryptocurrency financial services platform that offered holders of cryptocurrencies the option of investing those assets with Cred or borrowing against those cryptocurrencies. In August 2018, not long after Cred was formed, Alexander was hired as Cred's Chief Capital Officer. Alexander's primary roles included soliciting cryptocurrency investments and allocating assets.

11.     In March 2020, Cred Capital, Inc. ("Cred Capital") was formed as a wholly owned subsidiary of Cred. In June 2020 Alexander left Cred and became the Chief Capital Officer of Cred Capital. Alexander claimed that in June 2020 he was also named as President and Sole Director of Cred Capital.

12.     One month later, in late June or early July 2020, Alexander was terminated by Cred Capital. At or about the same time, Alexander caused 225 Bitcoins held by Cred Capital to be transferred to one of his personal accounts. Between July 1 and 16, 2021, Alexander liquidated a portion of the 225 Bitcoins.

13.     On July 15, 2020, Cred and Cred Capital brought suit against Alexander in California state court in San Mateo County. *Cred Inc. (f/k/a Cred LLC), et al.*, v. Alexander, 20-CIV-02915 (Calif. Sup. Ct.). On July 17, 2020, the California state court issued a Temporary Restraining Order ("TRO") enjoining Alexander from transferring, transmitting, or using any digital assets belonging to Cred or Cred Capital except with the court's direction. In August 2020, the California state court issued a Preliminary Injunction extending the TRO until the conclusion of that case. Alexander was aware of the entry and terms of the California state court's TRO and Preliminary Injunction.

**B.     Cred and Cred Capital's Chapter 11 Bankruptcy Filing**

14.     On November 7, 2020, Cred, Cred Capital and certain other affiliates (the "Cred Debtors") filed voluntary chapter 11 petitions (the "Cred Cases") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"). The Cred Cases were jointly administered under Case No. 20-12836 (JTD).

15.     On November 18, 2020, three (3) of the Cred Debtors, including Cred Capital, commenced an adversary proceeding against Alexander seeking turnover of Cred cryptocurrency and other Cred property in his possession (the "<u>Adversary Proceeding</u>").

16.     On December 8, 2020, Alexander filed a motion to dismiss the Cred Capital bankruptcy case.  The motion was denied by the Bankruptcy Court on February 5, 2021.

17.     On December 23, 2020, the Bankruptcy Court entered an order directing the appointment of an examiner in the Cred Cases.  Thereafter, on January 7, 2021, the U.S. Trustee appointed Robert Stark as the examiner (the "<u>Cred Examiner</u>").  The March 8, 2021 report by the Cred Examiner noted that Alexander appeared to be a fugitive from the law in the United Kingdom.  On December 3, 2007, Alexander was convicted in the United Kingdom for crimes related to illegal money transfers and was sentenced to more than three years in prison.  Alexander disappeared on October 15, 2008, during a prison break at HMP Ford prison in West Sussex, England where he was serving his sentence.  *See* Report of Robert J. Stark, Examiner, D.I. 605 at 7 and 89-90.

18.     In December 2020 Alexander was still conducting business under the Cred Capital name and using a bank account titled in his own name "d/b/a Cred Capital, Inc."

19.     On January 16 and 17, 2021, Alexander liquidated the remaining Bitcoins he caused to be transferred from Cred Capital to himself in late June or early July 2020.  Some of the proceeds were placed in accounts maintained by Alexander at Wells Fargo and J.P. Morgan.  In the January/February 2021 time period, Alexander withdrew from these accounts at least $70,000 in cash and caused another $100,000 to be transferred to a different bank account maintained by Alexander.

20.     During a February 5, 2021 hearing, the Bankruptcy Court ordered Alexander "to transfer whatever Bitcoin he has that's related to what was transferred to him from Cred Capital and provide an explanation for why there's a difference between what he alleges is the amount that was transferred to him and the amount that the debtor says was transferred to him." (the "February 5, 2021 Order").  The Bankruptcy Court found that Alexander had transferred assets of the Cred Debtors during the pendency of the Cred Cases.  As required by the Bankruptcy Court's Order, on February 5, 2021, Alexander transferred approximately $2,773,488 to Cred Capital.

21.     On February 9, 2021, Alexander was deposed as part of the relief granted by the February 5, 2021 Order.  Alexander testified he had received a total of approximately $3,437,956 when he liquidated the remaining Bitcoins on January 16-17, 2021.  Alexander refused to answer questions regarding the missing $664,467 (the difference between the liquidation proceeds and the amount returned to Cred Capital on February 5, 2021).

22.     During the questioning on February 9, 2021, regarding the missing funds, Alexander demanded a break be taken.  When the parties went back on the record ten (10) minutes later, Alexander's counsel informed participants that Alexander had filed a voluntary chapter 11 petition during the break and would not be returning to the deposition due to the imposition of the automatic stay.

23.     Since the effective date of the Cred Debtors' confirmation plan, the Cred Inc. Liquidation Trust ("Cred Trust") has pursued the turnover of both assets and information from Alexander.  Additional depositions were taken of Alexander by the Cred Trust on May 13, 14 and 19, 2021.

### C. Alexander files for bankruptcy during his first deposition

24. On February 9, 2021, Alexander filed a voluntary chapter 11 case in the Bankruptcy Court for the Central District of California (the "California Bankruptcy Court"), Case No. 21-10214-MB (the "Alexander CA Bankruptcy") during a break in his Bankruptcy Court ordered deposition. Alexander's petition noted assets and liabilities of between one and ten million dollars. On February 10, 2021, a Subchapter V Trustee was appointed in the Alexander CA Bankruptcy.

25. On February 25, 2021, the California Bankruptcy Court converted Alexander's bankruptcy to one under chapter 7, based in part on Alexander's consent and request for conversion.

26. During a March 29, 2021 Meeting of Creditors held as part of the Alexander CA Bankruptcy, Alexander affirmed that all information in his bankruptcy filings was true and correct and that all assets and creditors were listed. Several times Alexander attested that he had listed every bank account to which he had access and he was not aware of any foreign bank accounts that he opened or had access to during the past four (4) years.

27. Alexander also testified on March 29, 2021, that he gave his wife monthly support payments of $4,000 and the most recent payment was made that month. In addition, Alexander noted that he guaranteed his wife's lease of a Porsche. Alexander's bankruptcy filings did not disclose the monthly payments or the lease guarantee.

28. By order dated April 8, 2021, the California Bankruptcy Court transferred Alexander's chapter 7 bankruptcy case to this Bankruptcy Court.

29. Alexander testified during a May 13, 2021 deposition conducted by the Cred Trust that he was then at his home in Sherman Oaks, CA.

30. During a May 19, 2021 deposition the Cred Trust attempted to question Alexander about Cred's loss of 800 Bitcoins in connection with a transaction involving QuantCoin. Alexander refused to answer any questions on the subject, asserting his Fifth Amendment privilege against compelled self-incrimination. This included Alexander asserting his Fifth Amendment right and refusing to answer questions such as whether he had the 800 Bitcoins; if he had taken any of the 800 Bitcoins or any proceeds thereof; and if he had access to any bank accounts that contained proceeds of the 800 Bitcoins. When then asked if he was present in the United States, Alexander refused to respond and disconnected his link to the virtual Zoom deposition.

31. Alexander later disclosed during his continued Meeting of Creditors on May 26, 2021, that he was located in Istanbul, Turkey. He again affirmed that his bankruptcy filings, including amendments filed on March 25, 2021, were true and correct. Alexander represented he had made no transfers of assets to family member within the past year. However, Alexander also testified that he had provided his wife with $4,000 per month for the last several years.

32. Alexander also testified on May 26, 2021, that his only bank account was located at USAA bank. Subsequently, a third Meeting of Creditors was held on July 7, 2021. It was at this time that Alexander disclosed he had been in Turkey since sometime in February 2021. Alexander also disclosed that he had opened a bank account in Turkey at the end of March 2021.

33. Despite his pending chapter 7 bankruptcy, Alexander signed an agreement with a real estate broker to sell his home located in Sherman Oaks, California for which he paid over $1 million.

### D. Alexander held in contempt of court and sanctioned

34. On March 23, 2021, a contempt proceeding was brought by the Cred Debtors/ Cred Trust in the United States District Court for the District of Delaware (the "District Court") (Case 21-CV-417 (MN)) regarding Alexander's continued failure to comply with the Bankruptcy Court's February 5, 2021 Order by, *inter alia*, not supplying all requested information and continued contradictory responses regarding transactions.

35. Alexander had provided contradictory testimony regarding the disposition of Cred, Cred Capital and his own assets during his four deposition sessions that occurred on February 9 and May 13, 14 and 19, 2021, as part of the Cred Cases. Further, he refused to answer certain questions regarding Cred and Cred Capital assets, in addition to assets that were under his personal control. This culminated in Alexander's assertion of the Fifth Amendment when questioned about 800 Bitcoins that were lost by Cred, and his abrupt departure from the May 19, 2021 deposition when asked whether he was located in the United States.

36. During the Cred Cases, Alexander refused to and/or was unable to provide support for transactions he participated in regarding assets of Cred, Cred Capital or himself. Paper and electronic data was not supplied or purportedly unavailable to support many of the transfers initiated or directed by Alexander. Alexander also could not provide paper or electronic support that would evidence all the transactions he participated in and/or directed. Further, Alexander did not disclose all cryptocurrency accounts he controlled or other vehicles by which he maintained and conducted electronic transactions.

37. This led to the District Court holding during a June 14, 2021 hearing that Alexander was in contempt of the Bankruptcy Court's February 5, 2021 Order. As found by the District Court:

> Here there is no question that the Bankruptcy Court Order is valid and Mr. Alexander knew of the order. The question is whether he complied with it. I find that he did not fully comply with the order. Mr. Alexander has had multiple opportunities to comply with the order but has repeatedly provide [sic] inadequate responses. Indeed, it appears that every time he is given another chance, new accounts or new transactions are uncovered, accounts and/or transactions that should have long ago been disclosed. Mr. Alexander has also been uncooperative during depositions failing to answer questions that he did not wish to answer and even unilaterally terminating the proceedings. He has also given answers such as those about what bank accounts he has at deposition that appear to be false. Moreover, I find that his assertions that he has no real memory of many of the transactions listed are not particularly credible given the relatively recent transactions and the substantial amounts of many of those transactions. Thus I find that Mr. Alexander has not complied with the Bankruptcy order and the question then is what sanction is appropriate.

38. The District Court did not believe a bench warrant would be effective as Alexander claimed to be in Turkey. The District Court instead ordered that Alexander was precluded from challenging the conclusion that forty-three (43) transactions identified by the Cred Trust (the "<u>Identified Transfers</u>") were improper and that Alexander did not have the right to make the Identified Transfers, which all relate to transfers of Cred and/or Cred Capital cryptocurrency or the proceeds thereof, that totaled approximately $971,000.

**COUNT 1 – DENIAL OF DISCHARGE UNDER 11 U.S.C. §§ 727(a)(2) and 727(a)(7)**

39. The U.S. Trustee realleges the allegations contained in Paragraphs 1- 38 above, as though fully set forth herein.

40. The Defendant was the Chief Capital Officer of Cred from August 2018 to May 2020 and the Chief Capital Officer of Cred Capital during June 2020.

41. Pursuant to 11 U.S.C. § 101(31)(A)(iv), Cred and Cred Capital were insiders of the Defendant when the Defendant was an officer of each.

42. In February 2020, while he was the Chief Capital Officer of Cred, the Defendant transferred or permitted to be transferred 800 Bitcoins to an imposter pretending to be an

investment vehicle. The Defendant's intent to hinder, delay, or defraud creditors can be inferred from his refusal to answer any questions about the transfer of property at issue during the Defendant's May 19, 2021 deposition.

43.     In late June or early July 2020, while he was the Chief Capital Officer of Cred Capital, the Defendant transferred or permitted the transfer of 225 Bitcoins from Cred Capital to an intermediary.

44.     On or about July 1, 2020, the Defendant received substantially all of the 225 Bitcoins from the intermediary. Over time the Defendant liquidated the 225 Bitcoins, and the proceeds were used for his own purposes.

45.     On January 16 and 17, 2021, the Defendant liquidated the remaining Bitcoins he received in July 2020 for approximately $3,437,956. This liquidation violated the California state court TRO and Preliminary Injunction, in addition to violating the automatic stay in place regarding assets of the Cred Debtors.

46.     On February 5, 2021, the Defendant was ordered by this Bankruptcy Court to transfer the liquidation proceeds Defendant obtained on January 16 and 17, 2021 to Cred Capital. While Defendant received $3,437,956 in Bitcoin proceeds, he only turned over approximately $2,773,488 to Cred Capital.

47.     When questioned under oath about the $664,467 shortfall during his February 9, 2021 deposition, the Defendant refused to answer. He then demanded a break in the deposition and filed for bankruptcy himself during the break and refused to answer questions, thereafter, relying on the automatic stay.

48.     The Defendant's intent to hinder, delay, or defraud Cred Capital's creditors can be inferred from his knowledge and disregard of the California state court's orders that enjoined

him from transferring, transmitting, or using any digital assets belonging to Cred or Cred Capital, except with the court's direction.

49. The Defendant's discharge should be denied pursuant to 11 U.S.C. §§ 727(a)(2)(A) and 727(a)(7) because the Defendant transferred or permitted the transfer of 800 Bitcoins from an insider (Cred) with the intent of hindering, delaying, or defrauding Cred's creditors within one year of Cred's chapter 11 petition and/or because the Defendant transferred or permitted the transfer of 225 Bitcoins from an insider (Cred Capital) with the intent of hindering, delaying, or defrauding Cred Capital's creditors within one year of Cred Capital's chapter 11 petition. Further, the Defendant failed to return $664,467 of proceeds he received on January 16 and 17, 2021 when he liquidated the remaining portion of the 225 Bitcoins still in his control on those dates.

**COUNT 2 – DENIAL OF DISCHARGE UNDER 11 U.S.C. §§ 727(a)(3) and 727 (a)(7)**

50. The U.S. Trustee realleges the allegations contained in Paragraphs 1- 49 above, as though fully set forth herein.

51. Relying on the Defendant's representations to Cred and his purported due diligence, Cred approved the transfer of 800 Bitcoins to an imposter.

52. The Defendant failed to keep or preserve information about the February 2020 transfer of 800 Bitcoins, from which the Cred Debtors' financial condition or business transactions might be ascertained or traced. The Defendant's failure to keep or preserve recorded information about the imposter was not justified under the circumstances, because one of the Defendant's primary roles at Cred was allocating Cred's assets.

53. The Defendant also failed to keep or preserve information about the proceeds of the 225 Bitcoins he received at or about the time of his termination from Cred Capital.

54. The District Court found that the Defendant concealed or failed to keep or preserve recorded information. The financial condition or business transactions of Cred, Cred Capital and even the Defendant could have been ascertained from such recorded information.

55. Pursuant to 11 U.S.C. §§ 727(a)(3) and (a)(7), the Defendant's discharge should be denied.

**COUNT 3 – DENIAL OF DISCHARGE UNDER 11 U.S.C §§ 727(a)(4) and 727(a)(7)**

56. The U.S. Trustee realleges the allegations contained in Paragraphs 1-55 above, as though fully set forth herein.

57. As set forth above, the Defendant knowingly and fraudulently made a false oath in connection with the Cred cases. This includes testimony given under oath in his Cred Depositions and during the Meetings of Creditors in his own bankruptcy case regarding assets of the Cred Debtors. The District Court also found that Alexander's testimony appeared to be false.

58. Pursuant to 11 U.S.C. §§ 727(a)(4) and (a)(7), the Defendant's discharge should be denied.

**COUNT 4 – DENIAL OF DISCHARGE UNDER 11 U.S.C. §§ 727(a)(5) and 727(a)(7)**

59. The U.S. Trustee realleges the allegations contained in Paragraphs 1-58 above, as though fully set forth herein.

60. The Defendant has failed to provide any explanation for Cred's loss or dissipation of 800 Bitcoins to an imposter in February 2020. Rather than provide information relating to the loss, the Defendant asserted his Fifth Amendment privilege against compelled self-incrimination.

61. The Defendant has failed to provide any explanation for the use of the 225 Bitcoins taken in approximately July 2020. And while certain funds were retuned, no explanation has been provided for the missing $664,467 in proceeds.

62. The Defendant had failed to provide any explanation for the 43 transactions totaling $971,000 that the District Court determined were improper and Defendant did not have the right to make.

63. Pursuant to 11 U.S.C. §§ 727(a)(5) and 727(a)(7), the Defendant's discharge should be denied.

**COUNT 5 – DENIAL OF DISCHARGE UNDER 11 U.S.C. §§ 727(a)(6) and 727(a)(7)**

64. The U.S. Trustee realleges the allegations contained in Paragraphs 1-63 above, as though fully set forth herein.

65. The Debtor refused to and did not obey the February 5, 2021 Order of this Bankruptcy Court issued as part of the Cred Cases.

66. Pursuant to 11 U.S.C. §§ 727(a)(6) and 727(a)(7), the Defendant's discharge should be denied.

**COUNT 6 – DENIAL OF DISCHARGE UNDER 11 U.S.C. §§ 727(a)(2)(A) and (a)(2)(B)**

67. The U.S. Trustee realleges the allegations contained in Paragraphs 1 - 66 above, as though fully set forth herein.

68. Defendant, with the intent to hinder, delay, or defraud a creditor of his estate, has transferred, removed, destroyed, mutilated or concealed or permitted that to happen, to property of his estate within one (1) year before the filing of his February 9, 2021 petition and after the date of the filing of his petition.

69. The Defendant, citing his Fifth Amendment right, refused to reveal any details of the missing 800 Bitcoins referenced in Count 1 above. Defendant also refused to reveal to what extent any of the 800 Bitcoins or proceeds thereof became his property and whether it was property of his estate.

70. Defendant transferred or caused to be transferred at least 225 Cred Capital Bitcoins to himself and over time liquidated these assets. While a portion of the proceeds were returned to Cred Capital, there remains a shortfall of at least $664,000. Defendant refuses to answer questions regarding the shortfall.

71. After the filing of his petition, Defendant took steps to sell his residence **on his own**, an estate asset for which he paid over $1 million in February 2020.

72. It was not until July 2021, at the fourth Meeting of Creditors in his own bankruptcy case that Defendant revealed he had a bank account in Turkey. On several prior occasion under oath Defendant testified he had no foreign accounts and/or only one account that was at USAA bank**.**

73. Pursuant to 11 U.S.C. §§ 727(a)(2)(A) and (a)(2)(B), the Defendant's discharge should be denied.

### COUNT 7 – DENIAL OF DISCHARGE UNDER 11 U.S.C. §§ 727(a)(3)(A)

74. The U.S. Trustee realleges the allegations contained in Paragraphs 1-73 above, as though fully set forth herein.

75. The Defendant did not maintain books and records documenting business and personal financial affairs in connection his receipt of Bitcoins and the liquidation proceeds thereof.

76. The Defendant has failed to keep or preserve recorded information from which his financial condition or business transactions might be ascertained.

77. Pursuant to 11 U.S.C. §§ 727(a)(3), the Defendant's discharge should be denied

**COUNT 8 – DENIAL OF DISCHARGE UNDER 11 U.S.C. §§ 727(a)(4)(A)**

78. The U.S. Trustee realleges the allegations contained in Paragraphs 1-77 above, as though fully set forth herein.

79. As set forth above, during the pendency of his Bankruptcy case, the Defendant knowingly and fraudulently made a false oath during depositions taken on May 13, 14 and 19, and during Meetings of Creditors that occurred on March 29, May 26 and July 7, 2021.

80. The Defendant testified on May 26, 2021, that his schedules were true and accurate and that he only had one bank account. The Defendant later testified on July 7, 2021, that he opened a bank account in Turkey at the end of March 2021.

81. The District Court on June 14, 2021, also found that Alexander's testimony appeared to be false.

82. Pursuant to 11 U.S.C. §§ 727(a)(4), the Defendant's discharge should be denied.

**Reservation of Rights**

83. The U.S. Trustee reserves all discovery rights under the Federal Rules of Bankruptcy Procedure.

84. The U.S. Trustee specifically reserves the right to amend this Complaint pursuant to Federal Rule of Bankruptcy Procedure 7015.

WHEREFORE the U.S. Trustee requests that this Court issue an order denying Defendant's discharge.

Respectfully Submitted,

**ANDREW R. VARA**
**UNITED STATES TRUSTEE,**
**REGIONS 3 & 9**

Dated: August 30, 2021      **BY:**   /s/Linda Richenderfer
Linda Richenderfer (DE Id # 4138)
Benjamin A. Hackman, Esq.
United States Department of Justice
Office of the United States Trustee
J. Caleb Boggs Federal Building
844 N. King Street, Room 2207, Lockbox 35
Wilmington, DE 19801
Telephone: (302) 573-6491
linda.richenderfer@usdoj.gov
benjamin.a.hackman@usdoj.gov